**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **JACKSON, KEY AND ASSOCIATES, LLC,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CASE NO. 1:18-CV-00322** |
| ) | |
| **BEAZLEY INSURANCE COMPANY, INC.,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## BEAZLEY'S MOTION TO DISMISS
## AND INCORPORATED MEMORANDUM OF LAW

Defendant Beazley Insurance Company, Inc. ("Beazley") respectfully submits this Motion to Dismiss Plaintiff Jackson, Key and Associates, LLC's ("Plaintiff") Complaint and Incorporated Memorandum of Law for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

## INTRODUCTION

This suit involves the application of plainly worded exclusions in Plaintiff's insurance policy with Beazley. The exclusions state that there is no coverage for any claim arising out of medical professional malpractice or physical injury. Plaintiff seeks coverage for a third-party indemnity claim brought against it by a medical provider that was sued by a patient for medical malpractice. The third-party claim asserts that Plaintiff is responsible for the patient's injuries because Plaintiff negligently converted the patient's medical records and seeks indemnification from Plaintiff for any medical malpractice damages the provider must pay. The indemnity claim therefore necessarily arises out of medical professional malpractice and physical injury and is excluded from coverage.

04568589.5

Plaintiff is wrong that the exclusions do not apply where Plaintiff itself did not perform the underlying medical services. The exclusions have no such requirement. The exclusions instead are unconditional and apply to any claim "based on or arising out of medical professional malpractice" and "arising out of or resulting from … physical injury."  The third-party indemnity claim fits that bill. This suit therefore should be dismissed.

## ALLEGATIONS OF COMPLAINT

Plaintiff is a software development and data hosting company that provides programming and software development services largely to the medical industry. (Compl. at ¶¶ 9-12). Relevant here, Plaintiff, through an intermediary, assisted Elk River Heath Services, Inc. ("Elk River") in July and August 2015 by converting Elk River's electronic medical records from one platform to another. (Id. at ¶¶ 17-21).

Almost two years later an Elk River patient ("Grissom") sued Elk River and certain Elk River medical practitioners (collectively "Elk River") for medical malpractice (the "Medical Malpractice Action"). (Id. at ¶ 22). Grissom alleged that he was incorrectly prescribed an ACE inhibitor medication, Lisinopril, which caused him severe physical injuries, including septic shock, respiratory failure, and renal injury, among others. (Id.; see also Ex. A, Petition[1], Medical Malpractice Action, at ¶¶ 8-15).[2]

---

[1] After Beazley issued its coverage disclaimer, Grissom filed an amended petition in the Medical Malpractice Action. The amended petition asserts the same medical malpractice claims and does not change the coverage analysis. Given that Plaintiff cites to the original petition in its Complaint, Beazley too cites to that petition herein.

[2] Documents referred to in Plaintiff's Complaint and that are central to Plaintiff's claims may be considered as part of a motion to dismiss without converting it into a summary judgment motion. See Brooks v. Blue Cross and Blue Shield of Florida, Inc., 116 F.3d 1364, 1369 (11th Cir. 1997) ("Where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment."). Further, this Court may take judicial notice of a fact which is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned" and properly consider such facts in ruling on Beazley's motion to dismiss. See Fed. R. Evid. 201(b); United States v. Jones, 29 F.3d 1549, 1553 (11th Cir. 1994); Cinel v. Connick, 15 F.3d 1338, 1343 (5th Cir. 1994).

Subsequently, within the Medical Malpractice Action, Elk River asserted a third-party claim against Plaintiff and certain other third-parties for contribution and indemnification (the "Third-Party Indemnity Claim"). (Compl. at ¶ 23). Therein Elk River asserted that Plaintiff improperly converted Elk River's electronic medical records by failing to export and/or omitting key patient information for Grissom directly and proximately causing Grissom's medical injuries. (*Id.*). Accordingly, Elk River asserted that if it was found liable to Grissom for medical malpractice for injuries he sustained due to his ingestion of Lisinopril, Elk River was entitled to contribution and indemnification from Plaintiff "for that portion of any recovery" by Grissom against Elk River for which Plaintiff was "determined to be responsible[.]" (*Id.* at ¶¶ 23-24; *see also* Ex. B, Petition, Third-Party Indemnity Claim, at ¶¶ 25-30).

Plaintiff tendered the Third-Party Indemnity Claim to Beazley for coverage under AFB Media Tech Policy No. V17AAA180401 (the "Policy"). (Compl. at ¶¶ 13, 25). The Policy generally provides claims-made coverage for negligent acts, errors and omissions in the rendering of professional and technology based services by Plaintiff during the January 21, 2018 to January 21, 2019 policy period during which the Third-Party Indemnity Claim was made. (*Id.* at ¶¶ 14-15, 19; *see also* Ex. C, Policy, Insuring Agreement, § I.A.). The Policy contains several exclusions, two of which are applicable here. The first is the Medical Services Exclusion, which states that:

1. The coverage under this insurance does not apply to Damages or Claims Expenses in connection with or resulting from any Claim:

    a. based on or arising out of medical professional malpractice including, but not limited to, the rendering o[r] failure to render medical professional services, treatment or advice;

(Compl. at ¶ 16; Ex. C, Policy, Medical Services Exclusion Endorsement, ¶ 1.a.). The second is the Physical Injury Exclusion, which states that:

The coverage under this insurance does not apply to any Claim or Loss: …

D.  For or arising out of or resulting from:

1.  physical injury, sickness, disease or death of any person, including any mental anguish or emotional distress that results from such physical injury, sickness, disease or death; …

(Ex. C, Policy, Exclusions, § V.D.).[3]

Beazley, through counsel, informed Plaintiff of Beazley's determination that the Policy provided no coverage for the Third-Party Indemnity Claim. (Compl. at ¶ 26). This was because the Third-Party Indemnity Claim was directly based on and arose out of allegations of medical malpractice and seeks contribution and indemnification for Elk River's liability for Grissom's physical injuries. (*Id.*). Plaintiff's counsel requested that Beazley reconsider its coverage determination and Beazley, again through counsel, confirmed that the Policy did not cover the Third-Party Indemnity Claim. (*Id.* at ¶¶ 27-28).

Plaintiff then filed this lawsuit against Beazley wherein it asserts three claims for relief. The first claim is for a declaratory judgment and seeks a declaration that the Policy obligates Beazley to defend and indemnify Plaintiff against the Third-Party Indemnity Claim. (*Id.* at ¶¶ 30-32). The second claim is for breach of contract and asserts that Beazley breached the Policy by refusing to defend Plaintiff against the Third-Party Indemnity Claim and failing to pay covered Claims Expenses. (*Id.* at ¶¶ 33-37). The third claim is for bad faith and vaguely asserts that

---

[3] Capitalized terms are defined in the Policy. Relevant here,

Claim is defined to include "a written demand received by any Insured, including the service of a suit." (Ex. C, Policy, Definition G.);

Claims Expenses is defined to include, with certain listed exceptions, "reasonable and necessary fees charged by an attorney designated pursuant to Clause II., Defense and Settlement of Claims, paragraph A." (Ex. C, Policy, Definition H.); and

Damages is defined to include, with certain listed exceptions, "a monetary judgment, award or settlement." (Ex. C, Policy, Definition O.).

Loss is defined to include Damages and Claims Expenses and certain other costs not at issue here. (Ex. C, Policy, Definition S.).

Beazley had no arguable or legitimate reason for denying coverage for the Third-Party Indemnity Claim. (*Id*. at ¶¶ 38-42).

## **LEGAL STANDARD**

A district court should grant a motion to dismiss "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) (citation omitted). While the Court must take all factual allegations made in a complaint as true, the United States Supreme Court heightened a plaintiff's pleading requirements in *Bell Atlantic Corporation v. Twombly*. 550 U.S. 544 (2007). In order to survive a motion to dismiss, the "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all of the allegations in the complaint are true." *Id*. at 555 (internal quotations and citations omitted).

Specifically, a plaintiff's claim must be dismissed if it fails to allege "enough facts to state a claim to relief that is plausible on its face" such that the plaintiff has not "nudged [its] claims across the line from conceivable to plausible." *Id*. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Importantly, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679; *see also Sinaltrainal v. Coca-Cola Co*., 578 F.3d 1252, 1260–61 (11th Cir. 2009), *abrogated on other grounds, Mohamad v. Palestinian Auth.*, 132 S. Ct. 1702 (2012).

## ARGUMENT

### A. Alabama Rules of Policy Interpretation

Insurance policies, like other contracts, are governed by general rules of contract construction. *Farmers & Merch. Bank v. Home Ins. Co.,* 514 So. 2d 825 (Ala. 1987). Absent ambiguity, "insurance policies are to be enforced according to their express terms and those terms should be given their plain and ordinary meaning." *Id*. In such case, "the interpretation of the contract and its legal effect are questions of law" for the court to decide. *Sentinel Ins. Co. v. Alabama Mun. Ins. Corp*., 188 So. 3d 640, 644 (Ala. 2015)

"In the absence of statutory provisions to the contrary, insurance companies have the same right as individuals to limit their liability, and to impose whatever conditions they please upon their obligations not inconsistent with public policy; and the courts have no right to add anything to their contracts or to take anything from them." *Robinson v. Hudson Speciality Ins. Grp*., 984 F. Supp. 2d 1199, 1205–06 (S.D. Ala. 2013) (DuBose, C.J.) (quoting *Upton v. Miss. Valley Title Ins. Co*., 469 So. 2d 548, 554 (Ala. 1985). Further, the rule that insurance policies must be enforced as written is equally applicable to policy exclusions. *Hartford Fire Ins. Co. v. Mitchell Co.,* No. CIV.A. 08-00623-KD-N, 2010 WL 5239246, at *5 (S.D. Ala. Dec. 15, 2010) (DuBose, C.J.) (citing *Allstate Ins. Co. v. Hardnett,* 763 So .2d 963 (Ala. 2000), *aff'd*, 440 F. App'x 759 (11th Cir. 2011). "Courts are not at liberty to rewrite policies to provide coverage not intended by the parties" and "cannot defeat express provisions in a policy, including exclusions from coverage, by making a new contract for the parties." *Id*. (quoting *Altiere v. Blue Cross & Blue Shield of Ala.,* 551 So. 2d 290, 292 (Ala.1989).

Plaintiff, as the insured, bears the burden of establishing coverage by demonstrating that a claim falls within the Policy. *Id*. Beazley, as the insurer, bears the burden of establishing that Policy exclusions apply. *Id*.

Lastly, the duty to defend is broader than the duty to indemnify. Therefore, Beazley's duty to defend at this preliminary stage "must be determined primarily from the allegations of the complaint." *Universal Underwriters Ins. Co. v. Stokes Chevrolet, Inc.*, 990 F.2d 598, 605 (11th Cir. 1993) (quoting *U.S. Fidelity & Guar. Co. v. Armstrong*, 479 So. 2d 1164, 1167 (Ala. 1985). If the allegations and damages sought against Plaintiff are those for which the Policy provides protection, Beazley is obligated to defend Plaintiff. *Id*.

### B. Plaintiff's Claims Are Due to Be Dismissed

#### 1. *Breach of Contract*

##### a. The Third-Party Indemnity Claim Is Based On And Arises Out Of Medical Professional Malpractice.

The Medical Services Exclusion states that the Policy does not cover any Damages or Claims Expenses in connection with any Claim "based on or arising out of medical professional malpractice including, but not limited to, the rendering o[r] failure to render medical professional services, treatment or advice." (Ex. C, Policy, Medical Services Exclusion Endorsement, ¶ 1.a.). Thus, coverage is excluded if the Third-Party Indemnity Claim is "based on or arises out of" medical malpractice, including the rendering of medical services.[4]

"The Alabama Supreme Court has stated that, in liability policies, the phrase 'arising out of ... has generally been held to be a broad, comprehensive term meaning 'origination from,' 'having its origin in,' 'growing out,' or 'flowing from.'" *Allstate Indem. Co.*

---

[4] Plaintiff's breach of contract claim is premised upon Beazley's failure to pay Claims Expenses only. (Compl. at ¶¶ 35-37).

*v. Berrey*, No. 1:15-CV-96-VEH, 2016 WL 3906414, at *14 (N.D. Ala. July 19, 2016) ("We start from the premise that arising out of, ... are words of much broader significance than 'caused by.' They are ordinarily understood to mean 'originating from,' 'having its origin in,' 'growing out of' or 'flowing from,' or, in short, 'incident to, or having connection with.'") (quoting *Taliaferro v. Progressive Specialty Ins. Co.*, 821 So. 2d 976, 980 (Ala. 2001) and *Blue Bird Body Co. v. Ryder Truck Rental, Inc.*, 583 F.2d 717, 726 (5th Cir. 1978); *Rush v. Jacksonville State Univ.*, 439 So. 2d 9, 11 (Ala. 1983) ("The words 'arising out of' are very broad, general and comprehensive terms, ordinarily understood to mean 'originating from,' 'having its origin in,' 'growing out of' or 'flowing from.'"). Indeed, "'[a]rising out of' language is broad—in fact, it is 'about as general and broad as it could be written.'" *QBE Ins. Corp. v. EMC Prop. & Cas. Co*., No. 2:09-CV-170-JHH, 2010 WL 11565347, at *10 (N.D. Ala. Feb. 23, 2010) (quoting *State Farm Fire & Cas. Co. v. Erwin*, 393 So. 2d 996 (Ala. 1981).

There can be no question here that the Third-Party Indemnity Claim originates from, grows out of, and flows from medical malpractice and the rendering of medical professional services. As set forth above, in the Medical Malpractice Action, Grissom sued Elk River for medical professional malpractice. He alleges that Elk River rendered professional services by improperly prescribing him certain medication that caused him severe medical injuries. (Compl. at ¶ 23; *see also* Ex. A, Petition, Medical Malpractice Action, at ¶¶ 8-15). Within the Medical Malpractice Action, Elk River asserted the Third-Party Indemnity Claim against Plaintiff seeking contribution and indemnification for any damages that Elk River may be obligated to pay to Grissom for medical malpractice. (Compl. at ¶¶ 23-24; *see also* Ex. B, Petition, Third-Party Indemnity Claim, at ¶¶ 25-30) (seeking contribution and indemnity "for that portion of any recovery" by Grissom against Elk River that Plaintiff was "determined to be responsible[.]"). As

the Third-Party Indemnity Claim specifically seeks contribution and indemnification from Plaintiff for damages awarded to Grissom against Elk River for medical malpractice, the Third-Party Indemnity Claim—*quite literally*—is based on and arises out of medical malpractice.[5] Therefore, it is excluded under the Policy.

### b. The Medical Services Exclusion Applies Regardless Of Who Performed The Medical Services.

Plaintiff alleges that the Medical Services Exclusion does not apply because it performed covered software services and is not alleged to itself have performed any excluded medical services, *i.e.*, the exclusion does not apply where the insured is alleged to have performed covered, as opposed to uncovered, services. This argument misses the mark.

The fact that Plaintiff is alleged to have performed covered professional services for Elk River hardly means that coverage exists under the Policy; such allegation instead is merely one of the keys that opens the door to the Policy's Insuring Agreement. Once that door is opened, which is assumed for purposes of this motion, the Medical Services Exclusion must be examined separately to determine coverage. That examination reveals that, unlike some other Policy exclusions, the Medical Services Exclusion is unconditional and applies regardless of who performed the medical services. To read it any other way would impermissibly graft "by the Insured" language into the exclusion that simply does not exist.[6]

---

[5] The fact that Elk River's claims against Plaintiff are derivative claims for contribution and indemnification is significant, but is not essential. Any other claims that Elk River could attempt to assert against Plaintiff to recover for damages Elk River must pay to Grissom in the Medical Malpractice Action would likewise "arise out of" medical practice and therefore be excluded under the Policy.

[6] To be sure, Beazley knew how to use this "by the Insured" language elsewhere in the Policy when it intended to tie conduct to an insured. The Insuring Agreement, for example, requires in relevant part a "Claim … arising out of any negligent act, error, [or] omission … in rendering Professional Services … *by the Insured* …" (Ex. C, Policy, Insuring Agreement, § I.A.) (emphasis added). Similarly, the dishonest acts exclusion bars coverage in relevant part for any "Claim … [a]rising out of … any criminal, dishonest, fraudulent or malicious act, error or omissions …, *if committed by any Insured* …" (Ex. C, Policy, Exclusions, § V.A.) (emphasis added).

*Safeco Insurance Company of America v. Golden* in instructive on this point. 984 F. Supp. 2d 1162 (M.D. Ala. 2013). The underlying plaintiffs sued husband and wife insureds in connection with an alleged sexual molestation by the husband. *Id*. at 1164. The insurer sought a declaratory judgment that it had no obligation to defend or indemnify the wife due to the policy's sexual molestation exclusion, which excluded loss or damage "arising out of … sexual molestation or sexual harassment." *Id*. at 1164-65. The wife argued—as Plaintiff here—that the exclusion applied only where <u>she</u> was alleged to have engaged in the excluded sexual misconduct—as opposed to her husband. *Id*. The Middle District of Alabama flatly rejected this argument, holding that:

> Unlike the exclusions for intentional acts and criminal acts, this exclusion is unconditional and does not require that the molestation be committed by "any insured." As this exclusion does not require that [the wife] herself molested the [victim], it is unaffected by the severability clause; <u>the exclusion applies regardless as to who committed the molestation.</u>

*Id*. at 1168 (emphasis added).

The recent *Massachusetts Bay Ins. Co. v. Am. Healthcare Servs. Ass'n* decision by the New Hampshire Supreme Court reached the same conclusion interpreting a more narrowly worded medical services exclusion. 172 A.3d 1043 (N.H. 2017). The underlying plaintiffs were patients that contracted Hepatitis C from a medical employee that contaminated needles. *Id* at 1046-47. They sued the insured staffing firm (Triage) that placed the employee with the medical provider. *Id*. The insurer (Arch) argued that the policy's medical services exclusion that excluded coverage for loss "that result[s] from the performance of failure to perform healthcare professional services" applied. *Id*. at 1050. The insured argued—again, as Plaintiff here—that since the underlying plaintiffs did not allege it performed excluded medical services and instead only that they negligently supervised the employee, the exclusion did not apply. *Id*. The New

Hampshire Supreme Court likewise rejected this argument, holding that the insured need not have performed the excluded services even under the more restrictive "resulting from" policy language:

> According the words their plain and ordinary meanings, we conclude that the healthcare professional services exclusion plainly applies to any claim that alleges bodily injury that results from the provision of medical services, regardless of whether Triage performed those services. Contrary to Triage's[] interpretations, the exclusion is not restricted to situations in which Triage provided the medical services. …
>
> We find no ambiguity in the healthcare professional services exclusion. The provision plainly applies to any claim that alleges bodily injury that results from the performance of healthcare professional services. Although Arch could have added language stating that the exclusion applies regardless of who performs the medical services, it did not need to do so because no part of the exclusion's language suggests in any way that the exclusion is limited to circumstances in which Triage itself performs the medical services. We will not manipulate the exclusion's language in an effort to create an ambiguity. As discussed above, the exclusion sets forth a type of harm for which coverage is excluded—bodily injury or property damage resulting from the performance or failure to perform health care professional services; the exclusion contains no language indicating that who performs or fails to perform the health care professional services is a relevant consideration that bears upon its applicability.

*Id.* at 1050-51 (emphasis added) (internal citations omitted).

The same reasoning applies here. The Medical Services Exclusion broadly states that it applies to any Claim "based on or arising out of medical professional malpractice including, but not limited to, the rendering o[r] failure to render medical professional services, treatment or advice." This language is plain and unambiguous and there is no requirement that Plaintiff perform the excluded medical services or be sued directly for medical malpractice in order for the exclusion to apply. The exclusion instead, on its face, is unconditional and broadly applies to any Claim "arising out of" medical malpractice—which the Third-Party Indemnity Claim plainly does.

#### c.     The Physical Injury Exclusion Also Excludes Coverage.

The Policy's Physical Injury Exclusion also excludes any Claim "arising out of or resulting from … physical injury …, including any mental anguish or emotional distress that results from such physical injury[.]" (Ex. C, Policy, Exclusions, § V.D.). The Physical Injury Exclusion in many ways compliments the Medical Services Exclusion and also bars coverage for the Third-Party Indemnity Claim.

As set forth above, Grissom alleges physical injuries and suffering in the Medical Malpractice Action and seeks to recover damages from Elk River for those injuries and suffering. (Ex. A, Petition, Medical Malpractice Action, at ¶¶ 15, 19). Through the Third-Party Indemnity Claim, Elk River, in turn, seeks contribution and indemnification from Plaintiff in the event there is a recovery by Grissom against Elk River for his injuries and suffering. (Compl. at ¶ 24; Ex. B, Petition, Third-Party Indemnity Claim, at ¶¶ 25-30). The Third-Party Indemnity Claim thus "arises out of and results from" physical injury and is thus excluded under the Physical Injury Exclusion. (*See supra* Section B.1.a., pp. 7-8 for discussion of application of "arising out of" language).

Any argument by Plaintiff that the Physical Injury Exclusion does not apply because Plaintiff itself did not physically injure Grissom is similarly misplaced. This is because—just as with the Medical Service Exclusion—there is no requirement that the insured itself physically injure anyone for the Physical Injury Exclusion to apply. *See Robinson v. Hudson Speciality Ins. Grp.,* 984 F. Supp. 2d 1199, 1208 (S.D. Ala. 2013) (DuBose, C.J.) (holding that derivative negligence claims against premises owner for underlying nightclub shooting by unknown assailants were excluded by policy exclusions for bodily injury "arising out of" use of weapons and assault and battery).

### 2. *Declaratory Judgment*

Plaintiff's declaratory judgment claim is duplicative of the breach of contract claim. It seeks a declaration that Medical Services Exclusion does not apply and therefore that the Policy obligates Beazley to defend and indemnify Plaintiff against the Third-Party Indemnity Claim. (Compl. at ¶¶ 30-32). For the reasons set forth above, the Third-Party Indemnity Claim is excluded from coverage under the Policy such the declaratory judgment claim too should be dismissed and/or is rendered moot. Although the breach of contract claim was limited to the duty to defend and pay Claims Expenses, "as there is no duty to defend in this case, there is also no duty to indemnify." *Auto-Owners Ins. Co. v. McMillan Trucking Inc.*, 242 F. Supp. 3d 1259, 1266 (N.D. Ala. 2017) (citing *Hartford Cas. Ins. Co. v. Merchants & Farmers Bank*, 928 So. 2d 1006, 1009 (Ala. 2005). *See also Harleysville Mut. Ins. Co. v. Dapper, LLC*, No. 2:09-CV-794-TFM, 2010 WL 3038929, at *1 (M.D. Ala. Aug. 3, 2010) ("The Court made the legal determination that there was no duty to defend and since the duty to defend is broader than the duty to indemnify, it is 'axiomatic that if there is no duty to defend then there is also no duty to indemnify.'"). In sum, Plaintiff's declaratory judgment claim fails for the same reason as Plaintiff's breach of contract claim—because coverage is excluded under the Policy.

### 3. *Bad Faith*

Plaintiff's bad faith claim fails for three reasons. First, and most fundamentally, because coverage is excluded under the Policy for the reasons stated above there can be no bad faith as a matter of law. Second, Beazley—at a minimum—had an arguable reason for denying coverage further precluding any bad faith claim. Third, coverage issues aside, Plaintiff has alleged no factual support for its purported bad faith claim.

### a. There Can Be No Bad Faith Claim Where Coverage Is Excluded Under The Policy.

Alabama law is clear that a breach of the insurance policy is a necessary element of bad faith claim. *State Farm Fire & Cas. Co. v. Brechbill*, 144 So. 3d 248, 257-58 (Ala. 2013). Accordingly, "[w]ithout breach of contract, there can be no bad faith." *Davis v. State Farm Fire & Cas. Co.*, No. 2:15-CV-02226-JHE, 2017 WL 4038407, at *11 (N.D. Ala. Sept. 13, 2017) (citing *Brechbill*, 144 So. 3d at 257).

Here, for the reasons stated above, the Policy plainly excludes coverage for the Third-Party Indemnity Claim. Because there is no coverage under the Policy, there is no breach. And because there is no breach, as a matter of law, there can be no bad faith. *See id*. Plaintiff's bad faith claim therefore is due to be dismissed.

### b. At A Minimum, There Is A Debatable Reason For Beazley's Coverage Denial Prohibiting Any Bad Faith Claim.

Alabama law is also clear that "the existence of a debatable reason for denying the claim at the time the claim was denied defeats a bad faith failure to pay the claim." *Brechbill*, 144 So. 3d 248, 259 (Ala. 2013); *Se. Nursing Home, Inc. v. St. Paul Fire & Marine Ins. Co.*, 750 F.2d 1531, 1538 (11th Cir. 1985) ("Under Alabama law, an insurer cannot be held liable for the tort of bad faith unless he lacks 'a legitimate or arguable reason for failing to pay the claim.'"). *Nationwide Mut. Fire Ins. Co. v. D.R. Horton, Inc.*, No. CV 15-351-CG-N, 2016 WL 5867044, at *14 (S.D. Ala. Oct. 6, 2016) ("To defeat a bad faith claim, the defendant does not have to show that its reason for denial was correct, only that it was arguable.") (citing *Liberty Nat. Life Ins. Co. v. Allen*, 699 So.2d 138, 143 (Ala. 1997). Accordingly, in order to make out a prima facie case of bad faith, the bad faith plaintiff must show that is entitled to a directed verdict on

the contract claim and, thus, entitled to recover on the contract claim as a matter of law." *Nat'l Savings Life Ins. Co. v. Dutton*, 419 So. 2d 1357, 1362 (Ala. 1982).[7]

Here, again, Plaintiff cannot even establish that Beazley breached the Policy, much less that it is entitled to a directed verdict on its breach of contract claim. Although Beazley contends that the Third-Party Indemnity Claims are plainly excluded from coverage for the reasons set forth herein, at a minimum, the Medical Services and Physical Injury Exclusions provide an arguable and debatable reason for disclaiming coverage such that Plaintiff's bad faith claim fails as a matter of law.

### c.   Plaintiff Alleges No Facts Supporting Its Bad Faith Claim.

Coverage aside, Plaintiff has not stated a claim for bad faith refusal to pay. Plaintiff instead vaguely recites the elements of bad faith a without setting forth any facts or specific allegations which would support an actionable claim. Such conclusory allegations fall short of the *Twombly/Iqbal* pleading standard.

To survive dismissal under Rule 12(b)(6), a cause of action must satisfy the pleading requirements of Rule 8(a)(2). *See Twombly*, 550 U.S. at 555. Importantly, to satisfy Rule 8(a)(2), a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. Instead, a plaintiff must allege "enough facts to state a claim for relief that is plausible on its face." *Id*. at 570. "The plausibility standard … asks for more than a sheer possibility that the defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Accordingly, "an unadorned, the-defendant-unlawfully-harmed-me accusation" is insufficient to

---

[7] Although Plaintiff's bad faith allegations are lacking (see discussion below), Plaintiff only attempts to assert a claim for "normal" bad faith such that the "directed-verdict-on-the-contract-claim" standard applies. Arguably, following *Brechbill*'s holding that absence of a debatable reason is a requirement for bad faith claims generally, the standard would apply regardless. Given Plaintiff's allegations, however, that issue need not be decided here.

satisfy Rule 8(a)(2), and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

In order to prove bad faith under Alabama law, Plaintiff must demonstrate: "(a) a breach of insurance contract, (b) the refusal to pay claim, (c) the absence of arguable reason, (d) the insurer's knowledge of such absence—with a conditional fifth element: (e) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim." *Brechbill*, 144 So. 3d at 257-58. Thus, in order to satisfy Rule 8 under *Twombly* and *Iqbal*, Plaintiff must allege specific facts that demonstrate it is plausible, rather than merely possible, that each of these elements is met. A review of each of Plaintiff's five "bad faith allegations" demonstrates that Plaintiff has not come close to meeting this standard:

Plaintiff's *first* bad faith allegation is in Paragraph 38. It contains no facts and simply asserts that Plaintiff "alleges Beazley has acted in bad faith by denying coverage."

Plaintiff's *second* bad faith allegation is in Paragraph 39. It contains one fact (that Beazley denied coverage) and asserts that Beazley's denial breached the Policy, which of course (while untrue) is a prerequisite to any bad faith claim.

Plaintiff's *third* bad faith allegation is in Paragraph 40. It contains no facts and only a threadbare recital that "Beazley ha[d] no arguable or legitimate reason for denying [Plaintiff] coverage under the Policy for the claims asserted" in the Third-Party Indemnity Claim. The only basis for this threadbare recital appears to be that Plaintiff disagrees with Beazley's interpretation of the Medical Services Exclusion.

Plaintiff's *fourth* bad faith allegation is in Paragraph 41. It contains no facts and only a threadbare recital that "Beazley ha[d] actual knowledge of the absence of any arguably reason

for refusing" to pay Plaintiff's claim. The only basis for this threadbare recital again appears to be that Plaintiff disagrees with Beazley's interpretation of the Medical Services Exclusion.

Plaintiff's *fifth* and final bad faith allegation is in Paragraph 42. It contains no facts and only a conclusory statement requesting that this Court enter punitive damages "for an amount the Court consider reasonable in light of Beazley's erroneous and unjustified refusal to pay Claims Expenses as required by the Policy."

These allegations are a textbook examples of the "threadbare recitals" and "conclusory statements" prohibited by *Twombly* and *Iqbal*. Plaintiff has alleged no facts at all supporting its bad faith claim and barely even recites the elements. These conclusory allegations do not satisfy Rule 8 and should be dismissed for this additional reason.

## **CONCLUSION**

For the reasons set forth above, Beazley respectfully requests that this Court dismiss Plaintiff's Complaint, with prejudice.

Respectfully submitted by,

*/s/ Joshua R. Hess*
Joshua B. Baker
Joshua R. Hess
*Attorneys for Defendant Beazley Insurance Company, Inc.*

OF COUNSEL:

MAYNARD, COOPER & GALE, P.C.
1901 Sixth Ave. North
Birmingham, AL 35203
Telephone: 205.254.1000
Fax: 205.254.1999

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing has been served upon the following counsel by filing via CM/ECF and/or placing a copy of same in the United States Mail, properly addressed and postage prepaid, this the 10th day of September, 2018:

Joshua P. Myrick
STANKOSKI MYRICK, LLC
8335 Gayfer Road Extension
P.O. Box 529
Fairhope, Alabama 36533
Telephone: 251-928-0123
Facsimile: 251-929-1000


/s/ Joshua R. Hess
**OF COUNSEL**

04568589.5

- 18 -