**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **JACKSON, KEY AND ASSOCIATES, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **CASE NO. 1:18-CV-00322** |
| **BEAZLEY INSURANCE COMPANY, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## BEAZLEY'S REPLY IN SUPPORT OF MOTION TO DISMISS

Defendant Beazley Insurance Company, Inc. ("Beazley") respectfully submits this Reply Brief in Support of its Motion to Dismiss Plaintiff Jackson, Key and Associates, LLC's ("Plaintiff") Complaint and Incorporated Memorandum of Law (Doc. 7).

## INTRODUCTION

The question before this Court on Beazley's motion to dismiss is a simple one: Does the Third-Party Indemnity Claim[1] brought against Plaintiff seeking contribution and indemnification for underlying medical malpractice damages "arise out of" medical professional malpractice and/or physical injury such that the claim is excluded from coverage? As anticipated, Plaintiff argues that the answer is no because the Third-Party Indemnity Claim alleges that Plaintiff negligently converted the injured patient's medical records and not that Plaintiff itself negligently provided medical services to the patient. The problem with this argument—which Beazley pointed out in it Motion to Dismiss—is that the subject policy exclusions do not require that Plaintiff itself perform medical services for the exclusions to apply. The exclusions instead are unconditional and apply to any claim "based on or arising out of medical professional

---

[1] Unless otherwise defined herein, capitalized terms have the same meaning as those set forth in Beazley's Motion to Dismiss (Doc. 7).

malpractice" and "arising out of or resulting from … physical injury." Simply stated, just because Plaintiff may have been sued for its negligent conversion of medical records does not mean that the corresponding indemnity claim against it for medical malpractice damages does not "arise out of" medical professional malpractice and/or physical injury. This is not to say that any conceivable claim for damages asserted by Elk River against Plaintiff for its negligent data conversion would be excluded. Just that the Third-Party Indemnity Claim for the recovery of medical malpractice damages plainly is. Plaintiff's suit therefore should be dismissed.

## REPLY

### A.    Breach of Contract

#### 1.    The Operative Pleading

Beazley agrees that the Third-Party Indemnity Claim is the operative pleading for purposes of determining Beazley's defense obligations and has never argued otherwise.[2] This, however, does not mean that the Medical Malpractice Action does not exist or must be ignored entirely. To the contrary, no matter what pleading is considered, there is no escaping that the Third-Party Indemnity Claim would not exist but for the Medical Malpractice Action and that the Third-Party Indemnity Claim seeks indemnification and contribution for medical malpractice damages sought to be imposed in the Medical Malpractice Action and nothing else. Any way you slice it, the Third-Party Indemnity Claim arises out of medical professional negligence and physical injury.

Plaintiff cites *Colony Insurance Company v. Custom Ag Commodities, LLC* to support its argument that the allegations of the Third-Party Indemnity Claim control. 272 F. Supp. 3d 948 (E.D. Tex. 2017). Again, while Beazley does not dispute that the Third-Party Indemnity Claim is

---

[2] *See e.g.*, Doc. 7 at pp. 7 and 12 ("[C]overage is excluded if the Third-Party Indemnity Claim is 'based on or arises out of' medical malpractice, including the rendering of medical services" and "The Third-Party Indemnity Claim 'arises out of and results from' physical injury and is thus excluded[.]").

the operative pleading for purposes of determining Beazley's duty to defend, *Colony* is entirely distinguishable. It is pro-insurer and holds that an insured cannot use conduct asserted against its indemnitee in an underlying action to trigger its own coverage for such conduct, *i.e.*, false advertising claims asserted against the insured's indemnitee in an underlying action cannot be used to trigger coverage for false advertising under the insured's own policy where the insured was not accused of false advertising. *See id*. at 959-61. The question here is not whether the medical negligence claims in the Medical Malpractice Action somehow trigger coverage for Plaintiff under the Beazley policy; the question instead is whether the Third-Party Indemnity Claim arises out of medical professional negligence and/or physical injury.

### 2.    The Medical Services and Physical Injury Exclusions Apply Regardless of Who Performed The Medical Services

Plaintiff's argument that medical services and physical injury exclusions do not apply because the Third-Party Indemnity Claim alleges that Plaintiff performed covered software services as opposed to uncovered medical services misreads the plain language of the Policy. As set forth in Beazley's Motion to Dismiss, Plaintiff's alleged performance of covered professional services merely works to open the door to the Policy's Insuring Agreement, which is assumed for purposes of Beazley's motion. Policy exclusions must be analyzed separately—otherwise, the exclusions would be rendered meaningless, *i.e.*, under Plaintiff's interpretation, allegations that Plaintiff performed covered professional services would automatically result in coverage without regard to policy exclusions. That is not how the Policy works.

Beazley cited two Alabama district court decisions for the proposition that policy exclusions using the same broad "arising out of" preamble language are not dependent on the insured committing any particular act or service. This Court's decision in *Robinson v. Hudson Speciality Ins. Grp.* found that derivative negligence claims against an insured premises owner

stemming from an underlying nightclub shooting by unknown assailants were excluded by policy exclusions for bodily injury "arising out of" use of weapons and assault and battery despite the insured not having been alleged to have participated in the shooting. 984 F. Supp. 2d 1199, 1208 (S.D. Ala. 2013) (DuBose, C.J.). And the Middle District *Safeco Insurance Company of America v. Golden* decision similarly found that an exclusion for loss "arising out of … sexual molestation or sexual harassment" barred coverage for derivative claims brought against an insured wife even though her husband was the only one alleged to have committed the sexual misconduct:

> Unlike the exclusions for intentional acts and criminal acts, this exclusion is unconditional and does not require that the molestation be committed by "any insured." As this exclusion does not require that [the wife] herself molested the [victim], it is unaffected by the severability clause; <u>the exclusion applies regardless as to who committed the molestation.</u>

984 F. Supp. 2d 1162, 1168 (M.D. Ala. 2013). Plaintiff makes two arguments in an attempt to distinguish these decisions.

Plaintiff first argues that these decisions are somehow distinguishable because they involved direct, as opposed to third-party, claims. (Doc. 16 at p. 7). Plaintiff offers no explanation or support for this argument. This is because the procedural form of the claim brought against the insured is entirely irrelevant. *See e.g., Zurich Specialties London Ltd. v. Bickerstaff, Whatley, Ryan & Burkhalter, Inc.*, 425 F. App'x 554, 556 (9th Cir. 2011) (holding that derivative third-party contribution claim against insured premised upon an underlying receiver action where insured was not named was excluded under policy exclusions for claims arising out of insolvency or bankruptcy). The question instead is simply whether the claim brought against the insured "arises out of"—or, as Alabama court's view it, originates from,

grows out of, or flows from—medical professional malpractice and/or physical injury. Here, it plainly does.

Plaintiff next argues that these decisions are somehow distinguishable because their exclusions were applied based on single, isolated occurrences, whereas the alleged negligent professional services here are independent from and occurred well before the underlying medical services. Plaintiff again offers no support for this argument, and notably avoids any discussion whatsoever of the breadth given to the phrase "arising out of" under Alabama law. (*See* Doc. 7 at pp. 7-8 for discussion of Alabama courts' broad treatment of this phrase in liability policies). Plaintiff's argument also misconstrues the allegations in these decisions. The underlying plaintiffs in both decisions alleged that the insured seeking coverage engaged in conduct independent from the otherwise excluded conduct. In *Robinson*, for example, the underlying plaintiff alleged that the insured premises owner generally failed to maintain the premises in a reasonably safe condition and failed to warn patrons on potentially hazardous conditions, which were independent of the later shooting itself.

Beazley also cited the recent New Hampshire Supreme Court *Massachusetts Bay Ins. Co. v. Am. Healthcare Servs. Ass'n* decision that applied a narrower medical services exclusion in Beazley's favor over the same objection by an insured. 172 A.3d 1043 (N.H. 2017). The insured staffing firm (Triage) was sued not for providing medical services, but instead for placing an employee that contaminated needles with the underlying plaintiffs' medical provider. *Id*. at 1046-47. The insured argued—as Plaintiff here—that since the insured's alleged negligent staffing services were independent of the excluded medical services the exclusion did not apply. *Id*. The courtly rejected this argument:

> According the words their plain and ordinary meanings, we conclude that the healthcare professional services exclusion plainly applies to any claim that alleges

bodily injury that results from the provision of medical services, regardless of whether Triage performed those services. Contrary to Triage's[] interpretations, the exclusion is not restricted to situations in which Triage provided the medical services. …

We find no ambiguity in the healthcare professional services exclusion. The provision plainly applies to any claim that alleges bodily injury that results from the performance of healthcare professional services. Although Arch could have added language stating that the exclusion applies regardless of who performs the medical services, it did not need to do so because no part of the exclusion's language suggests in any way that the exclusion is limited to circumstances in which Triage itself performs the medical services. We will not manipulate the exclusion's language in an effort to create an ambiguity. As discussed above, the exclusion sets forth a type of harm for which coverage is excluded—bodily injury or property damage resulting from the performance or failure to perform health care professional services; the exclusion contains no language indicating that who performs or fails to perform the health care professional services is a relevant consideration that bears upon its applicability.

*Id*. at 1050-51 (emphasis added) (internal citations omitted).

Plaintiff argues that this decision is distinguishable because, unlike the insured in it, "[h]ere, Elk River[] *could potentially* make a claim for negligence against [Plaintiff] even in the absence of the medical negligence claim against the Elk River Defendants." (Doc. 16 at p. 8) (emphasis in original). This argument however largely makes *Beazley's* point. The question here is not whether Elk River "*could potentially*" make a claim against Plaintiff independent of the underlying medical malpractice and physical injury that may be covered under the Policy. The question instead is whether the Third-Party Indemnity Claim *that was actually made by Elk River against Plaintiff and is the subject of this lawsuit* arises out of excluded medical malpractice and/or physical injury. The answer to that question is clear.

Plaintiff makes a seemingly related argument that the exclusions do not apply because the "the fact finder could determine that the Elk River Defendants are liable to Grissom [the injured patient] for medical negligence and award Grissom damages based on such finding. But, even if the fact finder awards Grissom damages based on medical negligence, the fact finder could still

find that [Plaintiff] was *not* negligent in the conversion of the EMR data, as alleged in the Third-Party [Indemnity Claim]." (Doc. 16 at p. 8) (emphasis in original). Beazley is uncertain how this argument is relevant or even supports Plaintiff's position. Of course the fact finder could find that Plaintiff was not negligent in the provision of its professional services to Elk River. That, however, has no bearing on whether the Third-Party Indemnity Claim against Plaintiff "arises out of" medical professional negligence and/or physical injury.[3]

Plaintiff also makes another seemingly related argument that the exclusions do not apply because the Elk River Defendants are claiming from Plaintiff "only those damages attributable to [Plaintiff's] negligent conduct." That is, because "the Elk River  Defendants do not allege that [Plaintiff] is responsible for *all* damages which might be assessed by reason of the medical services provided by the Elk River Defendants to Grissom [the injured patient]," the Third-Party Indemnity Claim "does not arise out of Grissom's claims in [the Medical Malpractice Action]." (Doc. 16 at p. 9) (emphasis in original). Beazley once again is uncertain how this argument is relevant or even supports Plaintiff's position. The question is not whether the Third-Party Indemnity Claim seeks to recover some or all of the medical malpractice damages awarded to Grissom. The question instead is whether the Third-Party Indemnity Claim "arises out of" medical professional negligence and/or physical injury. Again, it plainly does.

### 3.    Beazley Never Argued That the Exclusions Were "Insured-Based" Exclusions

Plaintiff's final argument is that the medical services and physical injury exclusions do not apply because they are "claims-based" exclusions, not "insured-based" exclusions. Plaintiff

---

[3] Notably, the insureds in the cases cited by Beazley could have been found not liable for the derivative conduct alleged against them as well. For example, the insured premises owner in *Robinson* may have been found not liable for negligent maintenance of its premises, or the insured wife in *Golden* may have been found not liable for negligent supervision of her husband, or the insured staffing company in *Massachusetts Bay* may have been found not liable for negligent staffing and supervision of the rogue employee. But that does not mean that the claims asserted against those insureds were somehow not barred by similar "arising out of" exclusions.

posits that because the exclusions apply only to types of claims that have been asserted against Plaintiff, they only apply to claims against Plaintiff alleging medical malpractice or physical injuries. According to Plaintiff, "[t]herefore, the exclusions do not exclude the claims asserted against [Plaintiff in the Third-Party Indemnity Claim] because the those claims clearly are not _for_ 'medical professional malpractice' or _for_ 'physical injury'[.]" (Doc. 16 at p. 9) (emphasis added).

This argument demonstrates Plaintiff's fundamental misunderstanding of the Medical Services and Physical Injury Exclusions. While Plaintiff may desire for the exclusions to only apply to claims _for_ medical services performed _by Plaintiff_ or _for_ physical injuries _inflicted by Plaintiff_ that is not how the exclusions read. Again, the exclusions are unconditional and broadly apply to any claim "_based on or arising out of_ medical professional malpractice" and "_arising out of or resulting from_ ... physical injury" period.[4] Alabama law requires that these exclusions be enforced as written, and as written, they exclude coverage for the Third-Party Indemnity Claim.

Further, no coverage exists for this Claim because it does not seek damages covered under the Policy. Beazley's duty to defend only exists when a Claim seeks covered damages. The Policy states, "The Underwriters shall have the right and duty to defend . . . any Claim against the Insured seeking Damages _which are payable under the terms of this Policy_ ...." (Doc. 7-3 at 28-29) (emphasis added). The Medical Services and Physical Injury Exclusions, meanwhile, not only apply to _Claims_ based on or arising out of medical professional malpractice or physical injury, but each also applies to any _Damages_ arising out of medical professional

---

[4] As noted in Beazley's Motion to Dismiss, Beazley knew how to use such "by the Insured" language elsewhere in the Policy when it intended to tie conduct to an insured. The Insuring Agreement, for example, requires in relevant part a "Claim ... arising out of any negligent act, error, [or] omission ... in rendering Professional Services ... _by the Insured_ ..." Similarly, the dishonest acts exclusion bars coverage in relevant part for any "Claim ... [a]rising out of ... any criminal, dishonest, fraudulent or malicious act, error or omissions ..., _if committed by any Insured_ ..." (_See_ Doc. 7 at fn. 6).

malpractice or physical injury.[5] Here, the _only_ recovery sought by Elk River in the Third-Party Indemnity Claim is for damages attributable to physical injury and medical malpractice. There can be no dispute on that point. It, therefore, makes no difference that the cause of action against Plaintiff is not styled as a cause of action for medical malpractice because no coverage exists for the type of damages sought in the Third-Party Indemnity Claim. Accordingly, Beazley has no duty to defend Plaintiff against this Claim.

### B.      Declaratory Judgment

Plaintiff asks this Court to stay any determination on the duty to indemnify because such determination is unripe for adjudication until damages are assessed against Plaintiff. (Doc. 16 at pp. 10-11). But _Plaintiff_ is the party that requested this Court enter a declaration on the duty to indemnify in the first place, not Beazley. (Doc. 1 at ¶ 32(c)). Assuming there is no duty to defend, Beazley submits that the appropriate action is for Plaintiff's declaratory judgment claim on the duty to indemnify to be dismissed as well. _See Auto-Owners Ins. Co. v. McMillan Trucking Inc._, 242 F. Supp. 3d 1259, 1266 (N.D. Ala. 2017) ("[A]s there is no duty to defend in this case, there is also no duty to indemnify.") (citing _Hartford Cas. Ins. Co. v. Merchants & Farmers Bank_, 928 So. 2d 1006, 1009 (Ala. 2005). _See also Harleysville Mut. Ins. Co. v. Dapper, LLC_, No. 2:09-CV-794-TFM, 2010 WL 3038929, at *1 (M.D. Ala. Aug. 3, 2010) ("The Court made the legal determination that there was no duty to defend and since the duty to defend is broader than the duty to indemnify, it is 'axiomatic that if there is no duty to defend then there is also no duty to indemnify.'").

---

[5] The Medical Services Exclusion provides that, "The coverage under this insurance does not apply to Damages . . . in connection with or resulting from any Claim: based on or arising out of medical professional malpractice . . . ." (Doc. 7-3 at 22).  Likewise the Physical Injury Exclusion provides that "The coverage under this Insurance does not apply to any Loss," where Loss is defined to include damages, "for or arising out of or resulting from: physical injury . . . ." (Doc. 7-3 at 31).

C.        __Bad Faith__

Beazley's arguments to dismiss Plaintiff's bad faith claim were threefold: (1) because coverage is excluded under the Policy there can be no bad faith as a matter of law; (2) Beazley—at a minimum—had an arguable reason for denying coverage further precluding any bad faith claim; and (3) coverage issues aside, Plaintiff has alleged no factual support whatsoever for its purported bad faith claim as required under *Twombly/Iqbal*. Plaintiff barely counters these arguments.

Plaintiff does not counter the first argument. This is because the bad faith claim plainly fails if there is no coverage as set forth herein. *See State Farm Fire & Cas. Co. v. Brechbill*, 144 So. 3d 248, 257-58 (Ala. 2013).

On the second argument, Plaintiff argues that Beazley did not have an arguable reason for denying coverage because Beazley somehow conflated the allegations in the Medical Malpractice Allegations with the Third-Party Indemnity Claim and misread its own exclusions. (Doc. 16 at p. 12). Even if Plaintiff was correct in its disagreement with the nature of the Third-Party Indemnity Claim and Beazley's reading of the exclusions (it is not), such disagreement, without more, does not support a claim for bad faith. Moreover, Plaintiff cannot show—and indeed has not even argued—that it is entitled to a directed verdict on its breach of contract claims as required to make out a prima facie case of bad faith. *See Nat'l Savings Life Ins. Co. v. Dutton*, 419 So. 2d 1357, 1362 (Ala. 1982) ("In order to make out a prima facie case of bad faith …, the bad faith plaintiff must show that is entitled to a directed verdict on the contract claim and, thus, entitled to recover on the contract claim as a matter of law."). *See also Nationwide Mut. Fire Ins. Co. v. D.R. Horton, Inc.*, No. CV 15-351-CG-N, 2016 WL 5867044, at *14 (S.D.

Ala. Oct. 6, 2016) ("To defeat a bad faith claim, the defendant does not have to show that its reason for denial was correct, only that it was arguable.").

Plaintiff finally does not counter Beazley's third argument on Plaintiff's failure to plead any facts supporting bad faith. Indeed, Plaintiff does not point to a single factual averment in its Complaint supporting bad faith other than that Beazley denied coverage—because there is none. Plaintiff's *only* argument is that Plaintiff should be allowed to conduct discovery to determine to the scope of Beazley's investigation in an attempt to reverse engineer an "abnormal" bad faith claim. (Doc. 16 at p. 12). Plaintiff, however, *has not even attempted to plead an abnormal bad faith claim in its Complaint*. (*See* Doc. 1 at ¶¶ 38-42). And even if Plaintiff had, the law does not permit these types of fishing expeditions on factually unsupported claims. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.")

## CONCLUSION

The Third-Party Indemnity Claim asserts that Plaintiff is responsible for the underlying patient's injuries and seeks indemnification from Plaintiff for any medical malpractice damages Plaintiff's indemnitee (Elk River) must pay. The Third-Party Indemnity Claim therefore necessarily arises out of medical professional malpractice and physical injury and is excluded from coverage.

Plaintiff is wrong that the exclusions do not apply where Plaintiff itself did not perform the underlying medical services. The exclusions have no such requirement. The exclusions instead are unconditional and apply to any claim "based on or arising out of medical professional malpractice" and "arising out of or resulting from … physical injury."

Because coverage is excluded there can be no bad faith. And even if Plaintiff's arguments somehow placed coverage in reasonable dispute, that dispute necessitates the dismissal of Plaintiff's bad faith claims. This is not to mention Plaintiff's failure to plead any factual support.

For the reasons set forth herein, Beazley respectfully requests that this Court dismiss Plaintiff's Complaint, with prejudice.

Respectfully submitted by,

*/s/ Joshua B. Baker*
Joshua B. Baker
Joshua R. Hess
*Attorneys for Defendant Beazley Insurance Company, Inc.*

OF COUNSEL:

MAYNARD, COOPER & GALE, P.C.
1901 Sixth Ave. North
Birmingham, AL 35203
Telephone: 205.254.1000
Fax: 205.254.1999

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served upon the following counsel by filing via CM/ECF and/or placing a copy of same in the United States Mail, properly addressed and postage prepaid, this the 16th day of October, 2018:

Joshua P. Myrick
STANKOSKI MYRICK, LLC
8335 Gayfer Road Extension
P.O. Box 529
Fairhope, Alabama 36533
Telephone: 251-928-0123
Facsimile: 251-929-1000

*/s/ Joshua B. Baker*
**OF COUNSEL**

- 12 -