**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **JACKSON, KEY AND ASSOCIATES, LLC,**   ) | |
| ) | |
| **Plaintiff,**   ) | |
| ) | |
| **v.**   ) | **CASE NO. 1:18-CV-00322-KD-C** |
| ) | |
| **BEAZLEY INSURANCE COMPANY, INC.,**   ) | |
| ) | |
| **Defendant.**   ) | |
| ) | |

## REPORT AND RECOMMENDATION

This cause is before the Magistrate Judge for issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b), on the Complaint (doc. 1), motion to dismiss and incorporated brief (doc. 7) filed by Defendant Beazley Insurance Company, Inc. ("Beazley"), the response to motion to dismiss (doc. 16) filed by Plaintiff Jackson, Key and Associates, LLC ("Plaintiff"), and the reply in support of motion to dismiss (doc. 18) filed by Beazley. Upon consideration of the foregoing and oral arguments by counsel, the Magistrate Judge RECOMMENDS that Beazley's motion to dismiss (doc. 7) be GRANTED and that the Complaint be dismissed, with prejudice.

### I.    Background

Plaintiff is a software development and data hosting company that provides programming and software development services largely to the medical industry. (Doc. 1. at ¶¶ 9-12). A third-party data hosting firm engaged Plaintiff to provide assistance in converting certain electronic medical records for Elk River Heath Services, Inc. ("Elk River") from one platform to another in July and August 2015.  (*Id*. at ¶¶ 17-21).

Almost two years later an Elk River patient ("Grissom") sued Elk River and certain Elk River medical practitioners (collectively "Elk River") for medical malpractice (the "Medical

Malpractice Action"). (*Id*. at ¶ 22). Grissom alleged that he was incorrectly prescribed an ACE inhibitor medication, Lisinopril, which caused him severe physical injuries, including septic shock, respiratory failure, and renal injury, among others. (*Id*.; Doc. 7-1 at ¶¶ 8-15).[1]

Subsequently, within the Medical Malpractice Action, Elk River asserted a third-party claim against Plaintiff and certain other third-parties for contribution and indemnification (the "Third-Party Indemnity Claim"). (Doc. 1 at ¶ 23). Therein Elk River asserted that Plaintiff improperly converted Elk River's electronic medical records by failing to export and/or omitting key patient information for Grissom directly and proximately causing Grissom's medical injuries. (*Id*.). Accordingly, Elk River asserted that if it was found liable to Grissom for medical malpractice for injuries he sustained due to his ingestion of Lisinopril, Elk River was entitled to contribution and indemnification from Plaintiff for that portion of any recovery by Grissom against Elk River for which Plaintiff was determined to be responsible. (*Id*. at ¶¶ 23-24; Doc. 7-2, at ¶¶ 25-30).

Plaintiff tendered the Third-Party Indemnity Claim to Beazley for coverage under AFB Media Tech Policy No. V17AAA180401 (the "Policy"). (Doc. 1 at ¶¶ 13, 25). The Policy generally provides claims-made coverage for negligent acts, errors and omissions in the rendering of professional and technology-based services by Plaintiff during the January 21, 2018 to January 21, 2019 policy period during which the Third-Party Indemnity Claim was made. (*Id*.

---

[1] Documents referred to in Plaintiff's Complaint and that are central to Plaintiff's claims may be considered as part of a motion to dismiss without converting it into a summary judgment motion. *See Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) ("Where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment."). Further, the Court may take judicial notice of a fact which is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned" and properly consider such facts in ruling on Beazley's motion to dismiss. *See* Fed. R. Evid. 201(b); *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994); *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994).

at ¶¶ 14-15, 19; Doc. 7-3 at 2-3). The Policy contains several exclusions, two of which are applicable here. The first is the Medical Services Exclusion, which states that:

> 1. The coverage under this insurance does not apply to Damages or Claims Expenses in connection with or resulting from any Claim:
>
>    a. based on or arising out of medical professional malpractice including, but not limited to, the rendering o[r] failure to render medical professional services, treatment or advice;

(Doc. 1. at ¶ 16; Doc. 7-3 at 22). The second is the Physical Injury Exclusion, which states that:

> The coverage under this insurance does not apply to any Claim or Loss: …
>
> D. For or arising out of or resulting from:
>
>    1. physical injury, sickness, disease or death of any person, including any mental anguish or emotional distress that results from such physical injury, sickness, disease or death; …

(Doc. 7-3 at 31).[2]

Beazley, through counsel, informed Plaintiff of Beazley's determination that the Policy provided no coverage for the Third-Party Indemnity Claim. (Doc 1. at ¶ 26). This was because the Third-Party Indemnity Claim was directly based on and arose out of allegations of medical malpractice and seeks contribution and indemnification for Elk River's liability for Grissom's physical injuries. (*Id.*). Plaintiff's counsel requested that Beazley reconsider its coverage determination and Beazley, again through counsel, confirmed that the Policy did not cover the Third-Party Indemnity Claim. (*Id.* at ¶¶ 27-28).

Plaintiff then filed this lawsuit against Beazley wherein it asserts three claims for relief. The first claim is for a declaratory judgment and seeks a declaration that the Policy obligates

---

[2] Capitalized terms are defined in the Policy. (Doc. 7-3 at 36-40). Relevant here,

Claim is defined to include "a written demand received by any Insured, including the service of a suit."

Claims Expenses is defined to include, with certain listed exceptions, "reasonable and necessary fees charged by an attorney designated pursuant to Clause II., Defense and Settlement of Claims, paragraph A."

Damages is defined to include, with certain listed exceptions, "a monetary judgment, award or settlement."

Loss is defined to include Damages and Claims Expenses and certain other costs not at issue here.

Beazley to defend and indemnify Plaintiff against the Third-Party Indemnity Claim. (*Id.* at ¶¶ 30-32). The second claim is for breach of contract and asserts that Beazley breached the Policy by refusing to defend Plaintiff against the Third-Party Indemnity Claim and failing to pay covered Claims Expenses. (*Id.* at ¶¶ 33-37). The third claim is for bad faith and asserts that Beazley had no arguable or legitimate reason for denying coverage for the Third-Party Indemnity Claim. (*Id.* at ¶¶ 38-42).

Beazley moved to dismiss (doc. 7) each of Plaintiff's claims with prejudice under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted on the basis that the Third-Party Indemnity Claim is excluded from coverage under the Policy. The undersigned addresses Beazley's motion herein.

## *II.    Legal Standard*

In deciding a motion to dismiss under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted," the Court must construe the complaint in the light most favorable to the Plaintiff, "accepting all well-pleaded facts that are alleged therein to be true." *Miyahira v. Vitacost.com, Inc.*, 715 F.3d 1257, 1265 (11th Cir. 2013). "Under Rule 10(c) Federal Rules of Civil Procedure, [copies of written instruments that are exhibits to a pleading] are considered part of the pleadings for all purposes, including a Rule 12(b)(6) motion." *Solis-Ramirez v. U.S. Dep't of Justice*, 758 F.2d 1426, 1430 (11th Cir. 1985) (per curiam). "Fed. R. Civ. P. 8(a)(2) requires that a pleading contain 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1288 (11th Cir. 2010) (quotation omitted). "'While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of

a cause of action will not do.'" *Id*. at 1289 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65, 167 L.Ed. 2d 929 (2007)). A complaint's "'[f]actual allegations must be enough to raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" *Id*. (quoting *Twombly*, 550 U.S. at 555). "[T]o survive a motion to dismiss, a complaint must now contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). While this "plausibility standard is not akin to a 'probability requirement' at the pleading stage, ... the standard 'calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the claim." *Id*. (quoting *Twombly*, 550 U.S. at 556).

Moreover, "'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.'" *Id*. at 1290 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Under the plausibility standard, "'where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief."' " *Id*. (quoting *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2))). *Iqbal* "suggested that courts considering motions to dismiss adopt a 'two-pronged approach' in applying these principles: 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Id*. (quoting *Iqbal*, 556 U.S. at 679). "Importantly, ... courts may infer from the factual allegations in the complaint 'obvious alternative explanation [s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Id*. (quoting *Iqbal*, 556 U.S. at 679 (quoting *Twombly*, 550 U.S. at 567)).

### III.    Analysis

## A. Breach of Contract

In Alabama, "[g]eneral rules of contract law govern an insurance contract." *Safeway Ins. Co. of Ala., Inc. v. Herrera*, 912 So. 2d 1140, 1143 (Ala. 2005). "In the absence of statutory provisions to the contrary, insurance companies have the same right as individuals to limit their liability, and to impose whatever conditions they please upon their obligations not inconsistent with public policy; and the courts have no right to add anything to their contracts or to take anything from them." *Upton v. Miss. Valley Title Ins. Co.*, 469 So. 2d 548, 554 (Ala. 1985) (quoting *Life & Cas. Ins. Co. v. Whitehurst*, 226 Ala. 687, 148 So. 164 (1933) (internal quotations omitted)).

However, Alabama courts have held that an insurance policy "shall be construed liberally in favor of the insured and strictly against the insurer. Exclusions are to be interpreted as narrowly as possible, so as to provide maximum coverage for the insured, and are to be construed most strongly against the insurance company, which drafted and issued the policy." *Allstate Ins. Co. v. Skelton*, 675 So. 2d 377, 379–380 (Ala. 1996) (internal citations omitted). "To the extent the language of an insurance policy provision is ambiguous, all ambiguities must be resolved against the insurance company." *Safeway Ins. Co.*, 912 So.2d at 1143. Nevertheless, "[i]nsurance companies are entitled to have their policy contracts enforced as written, rather than risking their terms either to judicial interpretation or the use of straining language, and the fact that different parties contend for different constructions does not mean that the disputed language is ambiguous." *Woodall v. Alfa Mut. Ins. Co.*, 658 So. 2d 369 (Ala. 1995) (quoting *Gregory v. Western World Ins. Co.*, 481 So. 2d 878, 881 (Ala. 1985) (internal citations and quotations omitted)).

"Whether a provision of an insurance policy is ambiguous is a question of law[,]" *Safeway Ins. Co.*, 912 So.2d at 1143, and "[t]he test to be applied by [a] court in determining

whether there is ambiguity is not what the insurer intended its words to mean, but what a reasonably prudent person applying for insurance would have understood them to mean ... In determining whether an ambiguity exists, a court should apply the common interpretation of the language alleged to be ambiguous....This means that the terms of an insurance policy should be given a rational and practical construction." *Porterfield v. Audubon Indem. Co.*, 856 So. 2d 789, 799 (Ala. 2002) (internal citations and quotations omitted). *See also American Resources Ins. Co. v. H & H Stephens Const., Inc.*, 939 So. 2d 868, 873 (Ala. 2006) (discussing the reasonably prudent person standard—*i.e.*, that the terms of a policy should be given a rational and practical construction).

"Under Alabama law, the insured bears the burden of establishing coverage by demonstrating that a claim falls within the policy[.]" *Auto–Owners Ins. Co. v. Toole*, 947 F. Supp. 1557, 1561 (M.D. Ala. 1996) (citing *Colonial Life & Accident Ins. Co. v. Collins*, 280 Ala. 373, 194 So. 2d 532, 535 (1967) and *U.S. Fidelity & Guaranty Co. v. Armstrong*, 479 So. 2d 1164, 1168 (Ala. 1985)). However, the burden shifts and the "insurer bears the burden of proving the applicability of any policy exclusion." *Id*.

### 1.     *The Medical Services Exclusion*

The Medical Services Exclusion states that the Policy does not cover any Damages or Claims Expenses in connection with any Claim "based on or arising out of medical professional malpractice including, but not limited to, the rendering o[r] failure to render medical professional services, treatment or advice." (Doc. 7-3 at 22). Thus, the Medical Services Exclusion applies if the Third-Party Indemnity Claim is "based on or arises out of" medical malpractice, including the rendering of medical services.[3]

---

[3] Plaintiff's breach of contract claim is premised upon Beazley's failure to pay Claims Expenses only. (Doc. 1 at ¶¶ 35-37).

"The Alabama Supreme Court has stated that, in liability policies, the phrase 'arising out of ... has generally been held to be a broad, comprehensive term meaning 'origination from,' 'having its origin in,' 'growing out,' or 'flowing from.'" *Allstate Indem. Co. v. Berrey*, No. 1:15-CV-96-VEH, 2016 WL 3906414, at *14 (N.D. Ala. July 19, 2016) ("We start from the premise that arising out of, ... are words of much broader significance than 'caused by.' They are ordinarily understood to mean 'originating from,' 'having its origin in,' 'growing out of' or 'flowing from,' or, in short, 'incident to, or having connection with.'") (quoting *Taliaferro v. Progressive Specialty Ins. Co.*, 821 So. 2d 976, 980 (Ala. 2001) and *Blue Bird Body Co. v. Ryder Truck Rental, Inc.*, 583 F.2d 717, 726 (5th Cir. 1978)); *Rush v. Jacksonville State Univ.*, 439 So. 2d 9, 11 (Ala. 1983) ("The words 'arising out of' are very broad, general and comprehensive terms, ordinarily understood to mean 'originating from,' 'having its origin in,' 'growing out of' or 'flowing from.'"). The Third-Party Indemnity Claim originates from, grows out of, and flows from medical malpractice and the rendering of medical professional services.

As set forth above, in the Medical Malpractice Action, Grissom sued Elk River for medical professional malpractice. He alleges that Elk River improperly prescribed him certain medication that caused him severe medical injuries. (Doc.1 at ¶¶ 22- 23; Doc. 7-1 at ¶¶ 8-15). Within the Medical Malpractice Action, Elk River asserted the Third-Party Indemnity Claim against Plaintiff seeking contribution and indemnification for any damages that Elk River may be obligated to pay to Grissom for medical malpractice. (Doc. 1 ¶¶ 23-24; Doc. 7-2 at ¶¶ 25-30). As the Third-Party Indemnity Claim specifically seeks contribution and indemnification from Plaintiff for damages awarded to Grissom against Elk River for medical malpractice, the Third-Party Indemnity Claim is based on and arises out of medical malpractice. Therefore, any Damages or Claims Expenses in connection with or resulting from the Third-Party Indemnity Claim are excluded under the Policy.

Plaintiff argues that the Medical Services Exclusion does not apply because the Third-Party Indemnity Claim alleges that Plaintiff performed covered software services as opposed to excluded medical services, that is, that the exclusion does not apply unless the insured itself is alleged to have performed excluded medical services. Plaintiff, however, reads the Medical Services Exclusion too narrowly. Unlike some other Policy exclusions,[4] the Medical Services Exclusion is unconditional and applies regardless of who performed the medical services. *See Safeco Insurance Company of America v. Golden,* 984 F. Supp. 2d 1162, 1168 (M.D. Ala.2013) (holding that exclusion for loss or damage "arising out of … sexual molestation or sexual harassment" excluded coverage for claims brought against insured who was not alleged to have molested victim because "the exclusion applies regardless as to who committed the molestation."); *Robinson v. Hudson Specialty Ins. Grp.*, 984 F. Supp. 2d 1199, 1208 (S.D. Ala. 2013) (holding that derivative negligence claims brought against premises owner for underlying nightclub shooting by unknown assailants were excluded by policy exclusions for bodily injury "arising out of" use of weapons and assault and battery). *See also Massachusetts Bay Ins. Co. v. Am. Healthcare Servs. Ass'n.*, 172 A.3d 1043, 1050-51 (N.H. 2017) ("According the words their plain and ordinary meanings, we conclude that the healthcare professional services exclusion plainly applies to any claim that alleges bodily injury that results from the provision of medical services, regardless of whether [the insured] performed those services. Contrary to [the insured's] interpretations, the exclusion is not restricted to situations in which [the insured] provided the medical services. …").

Plaintiff also makes a related argument that Beazley has improperly conflated the claims asserted against Plaintiff in the Third-Party Indemnity Claim with the claims asserted against Elk River in the Medical Malpractice Action. Specifically, Plaintiff argues that the allegations in the

---

[4] *See* Doc. 7-3 at 30-31 (excluding coverage for "Claim or Loss: … [a]rising out of or resulting from any criminal, dishonest, fraudulent or malicious act, error or omissions …, if committed *by any Insured* …") (emphasis added).

Third-Party Indemnity Claim, as opposed to the Medical Malpractice Action, must determine Beazley's duty to defend. But Beazley never contended otherwise. Further, no matter what pleading is considered, there is no escaping that the Third-Party Indemnity Claim would not exist but for the Medical Malpractice Action and that the Third-Party Indemnity Claim seeks indemnification and contribution for medical malpractice damages sought to be imposed in the Medical Malpractice Action and nothing else.

In sum, the Medical Services Exclusion broadly states that it applies to any Claim "based on or arising out of medical professional malpractice including, but not limited to, the rendering o[r] failure to render medical professional services, treatment or advice." This language is plain and unambiguous and there is no requirement that Plaintiff perform the excluded medical services or be sued directly for medical malpractice in order for the exclusion to apply. The exclusion instead, on its face, is unconditional and broadly applies to any Claim "arising out of" medical malpractice, which the Third-Party Indemnity Claim plainly does.

## 2.    *The Physical Injury Exclusion*

The Physical Injury Exclusion states that the Policy does not cover any Claim or Loss "[f]or or arising out of or resulting from: … physical injury, sickness, disease or death of any person, including any mental anguish or emotional distress that results from such physical injury[.]" (Doc. 7-3 at 31). Plaintiff did not address this exclusion separately in its response because it concedes that "either i) both exclusions apply[]; or ii) neither exclusion applies[.]" (Doc. 16 at 3). On this point, the Court agrees with Plaintiff. As set forth above, Grissom alleges physical injuries and suffering in the Medical Malpractice Action and seeks to recover damages from Elk River for those injuries and suffering. (Doc.1 at ¶¶ 22, 24; Doc. 7-1 at ¶¶ 15, 19). Through the Third-Party Indemnity Claim, Elk River, in turn, seeks contribution and indemnification from Plaintiff in the event there is a recovery by Grissom against Elk River for

his injuries and suffering. (Doc. 1 at ¶ 24; Doc. 7-2 at ¶¶ 25-30). The Third-Party Indemnity Claim therefore "arises out of and results from" physical injury and is also excluded under the Physical Injury Exclusion.

### B. Declaratory Judgment

Plaintiff's declaratory judgment claim is duplicative of its breach of contract claim. It seeks a declaration that Medical Services Exclusion does not apply and therefore that the Policy obligates Beazley to defend and indemnify Plaintiff against the Third-Party Indemnity Claim. (Doc. 1 at ¶¶ 30-32). For the reasons set forth above, the Third-Party Indemnity Claim is excluded from coverage under the Policy. Although the breach of contract claim was limited to the duty to defend and pay Claims Expenses, "as there is no duty to defend in this case, there is also no duty to indemnify." *Auto-Owners Ins. Co. v. McMillan Trucking Inc.*, 242 F. Supp. 3d 1259, 1266 (N.D. Ala. 2017) (citing *Hartford Cas. Ins. Co. v. Merchants & Farmers Bank*, 928 So. 2d 1006, 1009 (Ala. 2005). *See also Harleysville Mut. Ins. Co. v. Dapper, LLC*, No. 2:09-CV-794-TFM, 2010 WL 3038929, at *1 (M.D. Ala. Aug. 3, 2010) ("The Court made the legal determination that there was no duty to defend and since the duty to defend is broader than the duty to indemnify, it is 'axiomatic that if there is no duty to defend then there is also no duty to indemnify.'").

### C. Bad Faith

Plaintiff's bad faith claim fails because Alabama law is clear that a breach of the insurance policy is a necessary element of a bad faith claim. *State Farm Fire & Cas. Co. v. Brechbill*, 144 So. 3d 248, 257-58 (Ala. 2013). Accordingly, "[w]ithout breach of contract, there can be no bad faith." *Davis v. State Farm Fire & Cas. Co.*, No. 2:15-CV-02226-JHE, 2017 WL 4038407, at *11 (N.D. Ala. Sept. 13, 2017) (citing *Brechbill*, 144 So. 3d at 257). Having

established that the Third-Party Indemnity Claim is excluded under the Policy, there is no breach

of contract, and therefore, no bad faith. *See id.*

## IV. *Conclusion*

Based upon the foregoing, it is RECOMMENDED that Beazley's motion to dismiss (doc.

7) be GRANTED and that the Complaint be dismissed, with prejudice.

## V. *Notice of Right to File Objections*

A copy of this report and recommendation shall be served on all parties in the

manner provided by law. Any party who objects to this recommendation or anything in it must,

within fourteen (14) days of the date of service of this document, file specific written objections

with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b); S.D. ALA. L.R.

72.4. The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to

a magistrate judge's findings or recommendations contained in a report and recommendation in

accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal

the district court's order based on unobjected-to factual and legal conclusions if the party was

informed of the time period for objecting and the consequences on appeal for failing to object. In

the absence of a proper objection, however, the court may review on appeal for plain error if

necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must

identify the specific finding or recommendation to which objection is made, state the basis for

the objection, and specify the place in the Magistrate Judge's report and recommendation where

the disputed determination is found. An objection that merely incorporates by reference or refers

to the briefing before the Magistrate Judge is not specific.

**DONE** and **ORDERED** this the 30th day of November 2018.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**